ORDERED in the Southern District of Florida on __06/19/07__.



_Raymond B. Ray_

Raymond B. Ray, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov
Broward Division

In re:                                      Case No. 07-10597-BKC-RBR

Omar D. Fletcher                            Chapter 13

     Debtor.
_____/

### ORDER DENYING MOTION TO VALUE COLLATERAL

THIS MATTER came before the Court for an evidentiary hearing on June 5, 2007, upon the Debtor's Motion to Value Collateral (D.E. 26). Present at the hearing was the Debtor represented by counsel and Mercantile Bank, the secured creditor, also represented by counsel. At the hearing the Debtor was the only witness, the Court also received into evidence the following exhibits: (1) the retail installment contract (hereafter the "Contract"), and (2) 11 color photographs of the truck. The Court has carefully considered the evidence, the contents of the Court file, and demeanor of the witness; for the reasons delineated below the Court will deny the motion.

#### Findings of Fact and Procedural Background

The Debtor filed this Chapter 13 bankruptcy case on January 30, 2007.  On March 30, 2006, the Debtor entered into an agreement to purchase the 2006 Toyota Tundra. Therefore the purchase was within the 910 days contemplated by the hanging paragraph of 11 U.S.C.

§1325. As a result of the purchase the financing agreement was assigned to Mercantile Bank who holds a valid security interest in the truck.

The Debtor testified at trial and supported his testimony with eleven (11) photographs of the truck. The truck, which is a top of the line model, was purchased with an "off-road" package, mag wheels, and a DVD player for the second row seats.  This model has four full size doors and could sit six (6) grown persons in addition to its cargo area. The total price of the truck, including finance charges, according to the Contract is $65,895.52. Of the $65,895.52 amount, $24,558.99 is interest charges.  The Debtor proposes, under his chapter 13 plan, to pay a total of $31,734.60 of which $24,750.00 is for the truck with the remainder being interest. (C.P. 26). The Debtor testified that prior to purchasing this truck he drove a Mazda mini van and that the van was sufficient for his business needs until it broke down.  He also testified that his wife drives a Toyota Matrix.

The Debtor has been self employed for 5 years. His business involves the sale and shipping of software. He is the primary source of income for the family.  He testified that he needed a truck with a flatbed in order to transport pallets of software for his business. He further testified that the use of the truck would be business related, and that the family uses the Matrix for its personal activities. On cross examination he contradicted himself by stating that on the day he took the pictures he was going to the beach with family and friends. This discrepancy is supported by the picture of a beach chair and watermelon in the rear seat of the truck.

When asked why he selected this truck the Debtor stated that it was because the Mazda broke down and he quickly needed a replacement. He stated that he only went to a single Toyota dealership where they had only two trucks, of which, he chose the least expensive. There was no explanation as to why he did not check other Toyota dealerships or other makes or models for a better or competitively priced vehicles.

Through his motion the Debtor seeks to: (1) have the Court determine that the truck was primarily used for business purposes and (2) strip down the lien of Mercantile Bank.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C.§§ 1334 and 157.  This is a core proceeding under 28 U.S.C.§157(b)(2)(B) and (L).

The fundamental issue in this case revolves around the interpretation of the so-called "hanging paragraph" found in 11 U.S.C. §1325.  That paragraph found after 11 U.S.C. §1325 (a)(9) reads:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the-910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1 -year period preceding that filing.

In order for the hanging paragraph to apply to a debt three elements must be proven. First, there must be a purchase money security interest in a vehicle. Second, the debt must have been incurred within the 910 days prior to the petition. Finally, the vehicle must have been "acquired for the personal use of the debtor". *See e.g. In re: Press*, 2006 Bankr. LEXIS 2296 at *6 (Bankr. S.D. Fla. 2006).

The key issues this Court must determine are: (1) who bears the burden to prove the three elements of the hanging paragraph, and (2) what does "acquired for the personal use of the debtor" mean.

## Burden of Proof

Generally in cases such as this one, where the evidence is scant and the presentation poor, courts struggle to reach the correct result. In many cases a crucial factor is the

determination of who has the burden of proof.  With respect to the hanging paragraph there does not appear to be a court that has analyzed this issue.

The solution, in the view of this Court, lies with an examination of the procedural posture of the case.  In this case, as is common, the controversy starts with the Debtor seeking to value the collateral under 11 U.S.C. §506.  In a motion to value collateral under 11 U.S.C. §506(a) the debtor bears the initial burden of proof.  *See Sovereign Bank, F.S.B. v. Finnegan (In re Finnegan)*, 358 B.R. 644, 649 (Bankr. M.D. Pa. 2006). As part of this initial burden of proof the debtor has the burden of proving that §506(a) applies to the debt in question. This burden includes showing that the hanging paragraph is inapplicable.  Therefore, the burden of a §506(a) valuation action includes the burden of demonstrating the absence of at least one of the three elements found in the hanging paragraph.

This analysis is further bolstered by the awkward placement of the hanging paragraph in §1325.  In the opinion of this Court, the hanging paragraph would have been better placed directly in §506. Nonetheless, 11 U.S.C. §1321 requires that the debtor file a plan. This has been held to mean that the debtor bears the burden of proving that the plan is confirmable. *See In re Posey*, 2006 Bankr. LEXIS 2472 at * 2 (Bankr. N.D. Ind. 2006)(citations omitted).  Since the hanging paragraph appears in 11 U.S.C. §1325, which lists the requirements for confirmation, it is logical to conclude that it is the debtor's burden to show that the plan does not violate the terms of the hanging paragraph.

While the Court believes this analysis to be the best one, it is not without its drawbacks. This interpretation requires the debtor to prove a negative, namely, that one of the three elements is not met. Proving a negative is something that the "law rarely, if ever, imposes". *See Newport News Shipbuilding and Dry Dock Co. v. Dir., Ofc. of Workers' Comp. Programs*, 592 F.2d 762, 765 (4th Cir. 1979)(citation omitted). However, due to the particularly poor drafting

and placement of the hanging paragraph it is entirely possible that Congress intended for this result. *See e.g. In re Trejos*, 352 B.R. 249, 254, n.7 (Bankr. D. Nev. 2006)(disparaging the drafting quality of the 2005 amendments). Accordingly, it is the holding of this Court that the Debtor has the burden of proving that the hanging paragraph is inapplicable if they are to be successful on a §506(a) motion. *Accord In re Wilson,* No. 06-40367, 2006 WL 3512921, at * 2, Bankr. D. Kan. Dec. 5, 2006)(stating "[w]hen a debtor can establish that a vehicle has been acquired for business purposes, the hanging paragraph in §1325(a) will not apply.").

In this case the first two elements are undisputed. Mercantile Bank holds a purchase money security interest in the truck and the truck was bought within the 910 day pre-petition period. Therefore, the entire case will turn on whether the Debtor is able to prove that he did not acquire the truck for personal use.

Acquired for Personal Use

This case turns on whether the Debtor "*acquired* the car for *personal use*". 11 U.S.C §1325(a) hanging paragraph (emphasis added). There are two issues contained in this element. The first is temporal, namely, how does the Court apply a test that measures what the car was "acquired" for. The second is definitional, what does "personal use" mean.

According to the plain meaning of the statute it is the intention of the debtor at the time of acquisition that is important. *See In re Solis*, 356 B.R. at 408; *accord In re Press*, No. 06-10978, 2006 Bankr. LEXIS 2296, at *9-10 (Bankr. S.D. Fla)(noting that once the car was acquired for the personal use of the Debtor "incidental or even frequent use by [another party] is not a consideration under the plain meaning of the statute."). In many cases the best evidence will be the box checked on the contract, the application for credit, what type of insurance the car has, or some other indicator that occurred at, or close to, the time of purchase. Unfortunately, in this case there is no credible evidence from the time of acquisition

Page 5 of 8

and the boxes on the Contract are all blank. Therefore, the Court will infer the intent of the Debtor from the manner in which the car was ultimately used.  As such, due to the absence of any evidence regarding the acquisition of the car, if the car is determined to have been used for "personal use" it will be assumed to have been acquired for "personal use".  Accordingly, the analysis now turns to the meaning of "personal use".

In the time since the hanging paragraph was introduced there have been two tests that courts have used to determine this element. The first, is the "significant and material" test. *See In re Wilson*, 2006 WL 3512921, at *3; *In re Solis*, 356 B.R. 398, 409 (Bankr. S.D. Tex. 2006). The other is the "totality of the circumstances" test. *See In re Hill*, 352 B.R 69, 73 (Bankr. W.D. La. 2006).

Under the "significant and material" test, the Debtor has the burden of showing that he did not acquire the car for "significant and material" personal uses. *See In re Solis*, 256 B.R. at 409.  There are several factors which courts have considered in applying this test, namely: (a) transportation that satisfies personal wants (i.e. recreation); (b) transportation that satisfies personal needs (i.e. shopping or running errands); (c) transportation that satisfies family or personal obligations (i.e. trips to the doctor);(d) commuting to and from work, unless there is truly no other alternative. *See id.* at 410. In addition, this Court will also consider the options purchased on the truck.

Under this test the Debtor has failed to meet his burden. He testified that he used the truck to run personal errands.  He testified that he had taken the truck to the beach. In fact, one of the photographs shows a watermelon and beach chair in the back seat.  Most importantly, the Debtor testified that the truck's primary business use was to move palettes. However, the truck also has several options on it. Most notoriously, rear seat DVD players. The Court does not believe that palettes of software are capable of watching a DVD. The decision to purchase a car with such luxuries, without a business rationale, militates to finding that the intended use at

the time of acquisition was personal.

The "totality of the circumstances" test is somewhat different. Under this test the debtor is required to prove that the vehicle "enabled the debtor to make a significant contribution to the gross income of the family unit". *See In re Hill*, 352 B.R. at 73. In *Hill* the court applied this test reaching the conclusion that the car was not acquired for personal use. *See id*. at 74. The car in question was a pickup that the Debtor used to commute to work, but did not use while at work. This commute was deemed to be sufficient to be business use, because it allowed the Debtor to contribute income to the family. *See id.*

Under this test, the Debtor would prevail because he does use the car to commute to work. He also transports work related items on the truck. However, the Court declines to adopt this test. The "significant and material" test is more straight forward, better defined, and easier to apply than the "totality of the circumstances." *See e.g. In re Lorenz,* No. 06-71881-A, 2007 Bankr. LEXIS 1445, at * 23 (Bankr. E.D. Va. Apr. 19, 2007)(explaining the advantages of the "significant and material" test over the "totality of the circumstances" test).

At the end of the day a debtor is still left with three basic choices with respect to a car loan: (1) provide the secured creditor with treatment, which the secured creditor has accepted; (2) surrender the car to the secured creditor; (3) keep the car and provide the secured creditor with a stream of payments whose value is equal to the amount of the secured claim. *See In re Press*, 2006 Bankr. LEXIS 2296, at *2. If the Debtor elects the last option and chooses to challenge the valuation of the secured claim under §506, then he must be prepared to show why the hanging paragraph is inapplicable to his case.

Based upon the foregoing, it is **ORDERED**

1. The Debtor's motion to value collateral at $31,734.60 (D.E. 26) is hereby **DENIED**.

### ###

Clerk shall furnish copies to:

Assistant United States Trustee
Robin Wiener, Trustee
Brian J Cohen, Esq
Stuart M. Gold, Esq.
Mercantile Bank.